2000 OK 46

Martin UPTON, Plaintiff/Appellee,

v.

STATE of Oklahoma ex rel. DEPARTMENT OF CORRECTIONS, and Oklahoma Merit Protection Commission, Defendants/Appellants.

No. 91,618.

Supreme Court of Oklahoma.

June 20, 2000.

Michael T. Oakley, Oklahoma Department of Corrections, Joseph L. McCormick, Oklahoma Merit Protection Commission, Oklahoma City, OK, for the appellant.

Michael R. Green of Stites and Green, Tulsa, OK, for the appellee.

LAVENDER, J.

■ ¶ 1 Today's cause presents a question of first impression, i.e., whether the Oklahoma Department of Corrections [State or DOC] can terminate Upton [employee or appellee] while he is receiving compensation (temporary total disability) for an on-the-job injury under the terms of the Workers Compensation Act, 85 O.S.1994 1 et seq.

## I

### FACTS AND PROCEDURAL HISTORY

■ ¶ 2 The facts in the case are undisputed. Upton, a DOC employee, suffered an on-the-job injury on March 25, 1996 for which he was awarded temporary total disability[1] [TTD] under the terms of 85 O.S.1991 22. Due to the nature of his injury employee also received leave without pay from May 11, 1996 until September 8, 1997 under the provisions of the Oklahoma Personnel Act, specifically 74 O.S.1994 840–2.21(A). On the last mentioned date DOC terminated Upton for being absent from his work for more than one year. Although employee was receiving TTD when he was discharged, DOC contended his dismissal was justified under the authority of 74 O.S.1994 840–2.21(D).[2]

---

1. Temporary Total Disability is the "healing period or that period of time following accidental injury, when an employee is totally incapacitated for work due to illness resulting from injury." *Oklahoma Natural Gas Co. v. Davis*, 181 Okla. 530, 75 P.2d 435, 436 (1938).

2. The pertinent terms of 74 O.S.1994 840–2.21 are:

"D. An employee on leave without pay pursuant to the provisions of this section shall have the right to be returned to his or her original position *in accordance with rules promulgated by the Office of Personnel Management.* If it is found necessary for the good of the state to fill the position during the period the employee is on leave without pay the employee filling the position shall vacate the position upon the return of the employee on leave without pay, *subject to* layoff, transfer or demotion rights earned under the Oklahoma Personnel Act, Section 840.1 et seq. of Title 74 of the Oklahoma Statutes and *rules of the Office of Personnel Management.* The right to return to the original position shall expire one (1) year from the date of the start of leave without pay. If the employee has not returned to the original position of the employee or some other position within the agency within one (1) year from the date of the start of leave without pay, the employee may be separated in accordance with the Oklahoma Personnel Act and rules of the

¶ 3 Upton sought Merit Protection Commission [Commission] review of his termination. There he asserted his dismissal violated the terms of 85 O.S.1994 5(B),[3] which proscribe absenteeism-based discharge of an employee who is receiving TTD. The Commission upheld Upton's dismissal by order dated December 24, 1997. Employee appealed to the district court which reversed the Commission's order, holding that § 5(B) of the Workers Compensation Act [WCA] prohibited Upton's termination solely for absenteeism (in excess of one year) since he was receiving TTD. State next brought this appeal. The Court of Civil Appeals affirmed the district court's decision. Certiorari was sought and granted.

## II

### STATE CANNOT TERMINATE EMPLOYEES WHILE THEY ARE RECEIVING TEMPORARY TOTAL DISABILITY UNDER PROVISIONS OF THE WORKERS COMPENSATION ACT

¶ 4 Resolution of State's appeal requires the Court to construe the provisions of 85 O.S.1994 5(B) and 74 O.S.1994 840–2.21(D), which on first examination appear in conflict. Since today's cause implicates the meaning and intent of legislative enactments and there are no disputed facts, it poses only a question of law. Hence, the applicable standard of review is de novo.[4]

¶ 5 The contested provision of the Oklahoma Personnel Act provides that State *"may"* [5] terminate an employee absent from work for more than one year. The statutory language does not mandate termination but rather permits it under guidelines [6] to be promulgated by the Office of Personnel Management [OPM]—the agency legislatively commissioned to implement the Act. When the Legislature crafted the provisions of § 840–2.21(D) in issue, neither enacted legislation nor Oklahoma's extant jurisprudence condemned an employer's discharge of an employee who was receiving TTD, so long as the discharge was not retaliatory.[7] In 1992 the Legislature amended the WCA [specifically *85 O.S.1994 5* [8]]. In so doing it altered established legal precedent and denied an employer the right to dismiss an employee while he/she is receiving TTD. It is the later expression of legislative will evidenced in the 1992 amendment of § 5 which creates the tension that lies at the heart of Upton's cause.

¶ 6 It is fundamental that statutory construction begins with ascertainment of legislative intent which is often manifested in the law's stated purpose.[9] The best evidence of legislative intent is the statutory language itself.[10] Only after legislative objectives are determined, are rules of construction—as delimited by Oklahoma's extant jurisprudence—applied to facilitate conformation of the statutes' language to the ascertained intent. When construing what appears to be contradictory statutory syntax, the Court is

Office of Personnel Management." [Emphasis added.]

3.  The pertinent terms of 85 O.S.1994 5(B) are: "No person, firm, partnership, corporation, or other entity may discharge any employee *during a period of temporary total disability solely on the basis of absence from work."* [Emphasis added.]

4.  *State ex rel. Dept. of Human Services v. Baggett,* 1999 OK 68, 990 P.2d 235, 238.

5.  "May" is permissive as contrasted with "shall" which is mandatory in nature. *See Tate v. Browning–Ferris,* 1992 OK 72, 833 P.2d 1218, 1229.

6.  Although § 840–2.21(D) was enacted in 1988—the OPM rules effective when Upton was dis-

charged—were adopted in 1993, the year after § 5(B) was first enacted.

7.  *Pierce v. Franklin Electric Co.,* 1987 OK 34, 737 P.2d 921, 924. A "retaliatory" discharge is one based upon an employee's exercise of rights granted under the workers' compensation statutes. *Id.* at 922.

8.  For the amended provisions of 85 O.S.1994 5(B), see *supra* note.

9.  *Wilson v. Wilson,* 1999 OK 65, 987 P.2d 1210, *Welch v. Simmons,* 190 Okla. 611, 126 P.2d 89, 91 (1942).

10.  *Sharp v. Tulsa County Election Bd.,* 1994 OK 104, 890 P.2d 836, 839.

required, where possible, to construe the relevant provisions together in order to give force and effect to each.[11] Words are not always to be given their literal meaning but rather must be understood through the lens of legislative intent exemplified in the statute's avowed purpose.[12] Only when an *irreconcilable* conflict is found to exist between two statutes will the Court hold one of them to be *repealed by implication*.[13]

¶ 7 The Legislature's intent in enacting the Oklahoma Personnel Act [Act], 74 O.S.1991 840–1.1 et seq., is evinced in the Act's purposes set forth in § 840–1.2. There it is declared:

> "It is . . . the general purpose of this act to establish for the state a system to recruit, select, develop and maintain an effective and responsive work force; . . . to provide for adequate and reasonable protection and security for those who have entered and will enter into the service of the state . . . ."[14]

To accomplish the Act's delineated aims the legislature charged the OPM with responsibility for its "efficient and effective enforcement."[15]

¶ 8 The Workers Compensation Act—the other enactment in issue today—embodies multiple legislative objectives. At its broadest level the WCA is intended to spare Oklahoma employees—both public and private—the necessity of expensive and speculative trials for work-related injury and to protect employers from excessive judgments.[16] The purpose of 85 O.S.1994 5 is to protect employees who seek the WCA's benefits. It has been held to proscribe retaliatory discharges, i.e., dismissals based in significant part upon the exercise of rights granted under the WCA.[17] The provision in § 22 for the payment of temporary total disability has been held to have as its objective compensation of the claimant/employee for loss of wages during the time of healing from an on-the-job injury.[18] Doubtless, the 1992 amendment of § 5 [19] evinced legislative intent that a claimant was to be accorded protection from discharge based *solely* upon absenteeism while receiving TTD—i.e., *during the "healing" period*.

¶ 9 As further evidence of the legislative intent encompassed within the two acts at issue here, we reviewed the process by which the OPM met its charge to prepare rules (and amendments thereof) to satisfy the mandate of § 840–2.21(D). OPM proposed guidelines—implementing § 840–2.21(D)—in 1993. Amended Rule 530:10–15–10(j)(2) & (3), Permanent Rules of the Office of Personnel Management, provides in pertinent part:

> "(2) If an employee does not return to the original position or an alternate position within 1 year after the start of leave without pay, the Appointing Authority may terminate the employee under Section 840–7b(D).* An Appointing Authority that uses Section 840–7b(D) * as authority to terminate an employee shall give the employee a copy of (k) of this Section. Termination of permanent classified employee under this Section is subject to the pretermination hearing requirements of Section 840–6.4 of Title 74 of the Oklahoma Statutes.
>
> (3) *If Section 5(A)(2) [now 85 O.S. 5(B) ] of Title 85 of the Oklahoma Statutes prevents the Appointing Authority from terminating the employee*, the Appointing Authority shall place the employee on leave without pay according to that law. The rights and benefits of this Section and

**11.** *Ledbetter v. Okla. Alcoholic Bev. Laws Enforcement Com'n.*, 1988 OK 117, 764 P.2d 172, 179; *Eason Oil Co. v. Corp. Com'n.*, 1975 OK 14, 535 P.2d 283, 286.

**12.** *Protest of Chicago, R.I. & P. Ry. Co.*, 137 Okla. 186, 279 P. 319, 322 (1929).

**13.** Id.

**14.** 74 O.S.1991 840–1.2.

**15.** 74 O.S.1991 840–1.6.

**16.** *Fox v. Dunning*, 1927 OK 79, 255 P. 582, 585–86.

**17.** *Wallace v. Haliburton Co.*, 1993 OK 24, 850 P.2d 1056, 1058;*Thompson v. Medley Material Handling, Inc.*, 1987 OK 2, 732 P.2d 461, 463.

**18.** *Galey & Molloy v. Belt*, 1940 OK 271, 102 P.2d 868.

**19.** For the amendment's terms see *supra* note.

Section 840–7b(D) * shall no longer apply." [Emphasis added.]

[* Section 840–7b(D) is now renumbered as § 840–2.21(D).]

The amended rule's text demonstrates cognizance of the 1992 amendment—which forbids termination of an employee who is receiving TTD—to 85 O.S.1991 5.[20] When OPM proposes rules in fulfilment of a statutory mandate, the rules-process requires their submission to the Legislature for approval [which can be evidenced by the Legislature's failure to disapprove the same].[21] The Legislature chose not to disapprove proposed Amended Rule 530:10–15–10(j)(2) & (3), which further evidences its intent that the two acts—85 O.S. 5(B) and 74 O.S. 840–2.21—be understood in conjunction with each other.

¶ 10 It is within the ambit of the identified purposes and intent that the Court views the provisions of the two acts in issue. Also, we are mindful that because of the Workers Compensation Act's remedial nature, it should be accorded liberal construction in favor of those entitled to its benefits.[22]

With the identified legislative intents in mind, we now construe the suggested conflicting language of 85 O.S.1994 5(B) and 74 O.S.1991 840–2.21(D) to harmonize their terms. To the extent that the provisions of § 840–2.21(D) can be construed to permit an employee's discharge while he/she is receiving TTD, an *irreconcilable* conflict exists between § 840–2.21(D) and § 5(B). Because the later-in-time amendment of § 5 reflects the most recent legislative pronouncement regarding absenteeism-based termination of employees—be they private or public—who are receiving TTD, the former is repealed by implication, but only to the extent of any inconsistency.[23]

¶ 12 Today's holding does not render 74 O.S.1991 840–2.21(D) void of legal significance. Under its terms State may still terminate employees *solely* because they are absent from work for periods of time longer than one year when they are receiving forms of compensation—*other than TTD*—allowed under the terms of the WCA, e.g., temporary partial disability.[24] By construing § 840–2.21(D) as the Court does today, both § 840–2.21(D) and § 5 remain viable and effective legislative pronouncements.[25] The delimitation of the scope of each statute resolves any conflict between the two. The legislatively-declared purposes of both statutes are now achieved and State's employees are afforded the protection accorded employees in the private sector when they seek and receive temporary total disability under the terms of the Workers Compensation Act.

## III

## SUMMARY

¶ 13 Today's pronouncement addresses a conflict between two statutes governing State's right to terminate—solely because of absenteeism—an employee who is receiving temporary total disability. The *later-in-time* declaration of legislative intent is today given effect with the result that the provisions of 74 O.S.1994 840–2.21(D) are repealed to the limited extent they are inconsistent with the provisions of 85 O.S.1994 5(B). Section 840–2.21(D) remains efficacious insofar as it gov-

---

20. The adopted rule impliedly acknowledges the effect of Oklahoma's extant jurisprudence which holds that if State discharges an employee in violation of § 5 of the WCA, its conduct qualifies as a statutory tort from which the state has no immunity. *Gunn v. Consol. Rural Water & Sewer Dist. No. 1,* 1992 OK 131, 839 P.2d 1345, 1349–50; *see also Jarvis v. City of Stillwater,* 1983 OK 88, 669 P.2d 1108, 1110.

21. The required gubernatorial approval of the proposed Rule 530:10–15–10(j) was secured on May 17, 1993 and legislative approval occurred on May 24, 1993, when no legislative disapproval was voiced.

22. *Tulsa Rig & Reel Mfg. Co. v. Pritchett,* 176 Okla. 262, 55 P.2d 777 (1936).

23. See *City of Sand Springs v. Dept. of Public Welfare,* 1980 OK 36, 608 P.2d 1139, 1151, which holds that when an irreconcilable conflict exists between statutes, the later modifies the earlier.

24. For the scope of temporary total disability, see 85 O.S.1991 22(4).

25. For analysis comparable to that adopted by the Court today, see *Lucas v. State ex rel. Dept. of Human Services,* 9 P.3d 89, 2000 OK CIV APP 79, 2000 WL 943361.

erns State's right to terminate absent employees who are receiving forms of compensation—other than TTD—authorized under the terms of the Workers Compensation Act.

¶ 14 Upon certiorari earlier granted,

THE COURT OF CIVIL APPEALS' OPINION IS VACATED AND THE DISTRICT COURT'S DECISION IS AFFIRMED.

¶ 15 All Justices concur.